UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL J. ARCHIBALD, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MEL MARTINEZ, SECRETARY OF )<br>HOUSING AND URBAN DEVELOPMENT, )<br>)<br>Defendant. )<br> | C.A. No. 04-10503-MEL |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Defendant, Secretary of Housing and Urban Development (hereinafter "HUD" or "Defendant") by and through his Attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, herein submits this Memorandum in Support of His Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56(b) and (c) because the record shows that there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law.

**I.      Introduction**

Russell J. Archibald (hereinafter "Archibald" or "Plaintiff") alleges that HUD discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 when Plaintiff was not selected for promotion to the position of Public Trust Specialist in 1999. Defendant now moves for summary judgment because there are no material facts in dispute and Plaintiff can present no evidence that suggests that HUD's selection was based on racial discrimination or that HUD employs practices or policies that have created a racial

disparity in its hiring or promotion practices.

**II.    Jurisdiction**

Jurisdiction of this matter is predicated upon Title VII of the Civil Rights Act of 1964, codified, as amended, in 42 U.S.C. § 2000e et seq. Plaintiff cites several Constitutional and statutory provisions in addition to Title VII of the Civil Rights Act as grounds for jurisdiction; however, none of these provisions contains a waiver of sovereign immunity for suit against the government in this Court. See generally, U.S. v. Sherwood, 312 U.S. 584, 586 (1941)( "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."); U.S. v. Mitchell, 445 U.S. 535, 538 (1980).

**III.    Local Rule 56.1 Statement of Undisputed Material Facts**

Russell Archibald is a black person who is, and was at all times pertinent to this case, employed by HUD's Office of Fair Housing and Equal Opportunity ("FHEO") in Boston as a Civil Rights Analyst (GS-312-12), a Grade 12 position. (Ex. 2, ROI 6:1).[1] At the time of the alleged discrimination, he had been working in this position for approximately 12 years. Id.

In July of 1999, HUD posted vacancy announcement 00-PTO-1999-0110AZ seeking applications for Public Trust Specialists positions for the HUD office in Boston. (Ex. 9, ROI 15:1-4). According to the announcement, candidates must have worked the equivalent of one year in the "next lower grade, in the Federal Service, in the normal line of progression, that is

---

[1] "ROI" refers to the Report of Investigation prepared by an independent investigator pursuant to 29 C.F.R. § 1614.108. The ROI served as the record for Plaintiff's administrative proceedings before the Equal Employment Opportunity Commission. The first number following the "ROI" designation refers to the exhibit number; the second number, following the colon, refers to the page number of that exhibit.

typically related to work of this position." (Ex. 9, ROI 15:2. The announcement explained that candidates who satisfied this minimum requirement would be assessed according to the following four "Quality Ranking Factors": (1) skill in fact-finding analysis, formulating and presenting recommendations and negotiation resolution of complex issues, (2) ability to gather, assemble and analyze facts, draw conclusions and devise solutions to assigned problems, (3) ability to communicate clearly, concisely and informatively both orally and in writing, and (4) skill in using personal computers and database systems. (Ex. 9, ROI 15:3). As a result, candidates were asked to provide a narrative assessing their qualifications with regard to those factors. Id.

In August of 1999, Archibald submitted an application for the position of Public Trust Specialist (GS-1101-13), a newly created Grade 13 position. Id.; (Ex. 3, ROI 8:1; Ex. 10 16:1-20). A Grade 12 Civil Rights Analyst selected as a Public Trust Specialist would continue to perform his or her existing duties, but would have additional responsibilities and would be expected to act in more of a leadership or supervisory capacity. (Ex. 3, ROI 8:1).

After receiving the application, the Office of Personnel and Training at HUD's Headquarters in Washington selected Plaintiff and six other candidates as the "best-qualified" for the Public Trust Specialist position. (Ex. 11, ROI 18:1). According to the Office of Personnel's assessment, which was based entirely on the candidates' application materials and their self-composed narratives, Archibald and Linda Tuttle were tied with the highest numerical score. The Office of Personnel and Training forwarded the applications for the "best-qualified list" to a panel of HUD supervisors in HUD's New England Regional Office in Boston for additional review. (Ex. 11, ROI 18:1; Ex. 4, 10:1). The panel consisted of four individuals: Robert Buzza

(white), Program Center Director of FHEO; Merryl Gibbs (white), Program Operations Branch Chief; Timothy Robison (white), Chief of the Intake Assessment Division; and Amziah W. Craig (black), Chief of the Fair Housing Enforcement Branch. (Ex. 3, ROI 8:1-2). After receiving this list, the panel made a rough cut of the list to four finalists before proceeding to make more detailed evaluations of the remaining candidates. (Ex. 4, ROI 10:1). Both lists were roughly split between black and white candidates: four of the seven candidates in the original "best qualified" list, and two of the four candidates after the initial cut, were black. (Ex. 12, ROI 19:1; Ex. 5, 11:2).

Because the top four candidates all worked in the Boston Regional Office, the Boston recommendation panel members relied on their personal experiences with the candidates and did not conduct any interviews. (Ex. 4, ROI 10:2). The panel reviewed the final four candidates according to the original four Quality Ranking Factors along with at least one "local ranking factor" concerning the candidates' flexibility.[2] The members of the panel then assigned a score from 1 to 10 on each of the factors and used the combined scores to rank the candidates. (Ex. 4, ROI 10:2; Ex. 7, 13:1-2; Ex.8, 14:1). Of the four candidates, Plaintiff was ranked last. (Ex., ROI 10:2; Ex, 5, 11:2). According to the panel members, this was due in large part to the fact that Plaintiff had a long history of refusing to acquire elementary computer skills, which severely

---

[2] The record is unclear on how many local ranking factors were used, although it appears that flexibility was one of them. Robert Buzza, who provides the most detailed description, recalls two local ranking factors dealing with the candidate's flexibility and ability to represent HUD to others outside the agency. (Ex 4, ROI 10:1-2). Merryl Gibbs does not recall how many ranking factors were used in total and only remembers computer and communication skills as being part of the equation. (Ex. 5, ROI 11:2). Timothy Robison remembered five ranking factors and specifically named flexibility as being one of them. (Ex. 6, ROI 12:1-2). Last, Amziah Craig also remembered five ranking factors, but does not specify any of the local factors in his affidavit. (Ex. 7, ROI 13:1).

affected his score with regard to the fourth quality ranking factor. It was also because Plaintiff had asserted on numerous occasions that he preferred to work alone, which affected his local factor score on versatility. (Ex. 4, ROI 10:3, Ex. 6, 12:2). Linda Tuttle (white), who was eventually selected for the position, was ranked first while Persis Brown (black), who would later be selected for another Public Trust Specialist position in the Boston office, was ranked second. (Ex. 4, ROI 10:4, Ex. 5, 11:2). As a result of the ranking, the panel decided to recommend Ms. Tuttle for the position. Id.

After its review, the panel submitted its ranking and recommendation to Marcella Brown (black), who was the New England Director of FHEO. (Ex. 1, ROI 8:2). Marcella Brown then passed the recommendation to Eva Plaza (Hispanic), the Assistant Secretary of FHEO at HUD headquarters. Id., (Ex.4, ROI 9:2). Ms. Plaza accepted the recommendation and selected Ms. Tuttle for the Public Trust Specialist position. (Ex. 12, ROI 20:1).

After Plaintiff was informed of the decision, he lodged an administrative complaint with HUD alleging that he had been discriminated against on the basis of race. (Ex. 1, ROI 1:1-2). He admits that he was never told why he was not selected, nor did he inquire. (Ex. 2, ROI 6:4). Nevertheless, he argued that the fact that Ms. Tuttle was selected over him even though she had less education, experience, and years of service demonstrated that his non-selection was due to racial discrimination. Id., (Ex. 1, ROI 1:2). Moreover, Plaintiff alleged that there was a pattern of discrimination at the Boston HUD office, where white employees with less education and work experience were being promoted before minority employees. (Ex. 1, ROI 1:2). After exhausting administrative remedies before the U.S. Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed a complaint in district court on March 11, 2004. An amended

complaint was filed on August 4, 2004, followed by another amended complaint on June 27, 2006.

## IV.     Summary Judgment Standard of Review

A party is entitled to judgment as a matter of law under Federal Rules of Civil Procedure 56(c) if the records "show that there is no genuine issue as to any material fact." In determining whether a genuine issue exists, the central question is whether "the evidence is such that a reasonable jury could return a verdict for a nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has no burden to produce evidence to defeat the nonmoving party's claim. Rather, the moving party can prevail by demonstrating "an absence of evidence supporting the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Moreover, "[t]he party opposing the motion . . . may not rest upon mere allegations; it must set forth specific facts demonstrating that there is a genuine issue for trial." Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1106 (1st Cir. 1989). As the Supreme Court explained, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted).

## V.     Arguments

Employment discrimination cases under Title VII are ordinarily divided into two categories: disparate treatment and disparate impact. Whereas the former involve situations where an "employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin . . . [t]he latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one

group than another and cannot be justified by business necessity." Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). Because the process and evidence required for proving disparate treatment and disparate impact cases differ, classifying the case is required in order to assess its merit. In this case there are elements of both theories in Plaintiff's amended complaint, so the arguments below will address both theories and demonstrate why summary judgment is appropriate under either theory.

    A.    **Disparate Impact**

Although Plaintiff's initial complaint before the EEOC focused primarily on the theory of disparate treatment, his amended complaint now seems to focus almost entirely on the theory of disparate impact. Notwithstanding this shift, Plaintiff has failed to present any evidence that raises a genuine issue of material fact with regard to this claim.[3]

Unlike the theory of disparate treatment, which focuses on rooting out intentional discrimination, a case of disparate impact seeks to identify facially neutral employment practices and policies that more adversely affect a protected class of employees. Whether the employer intended to discriminate is not an issue. See Griggs v. Duke Power, 401 U.S. 424, 432 (1971).

The necessary steps for proving a disparate impact claim first set forth in Griggs have since been codified by Congress in Title VII through provisions inserted in 1991. According to the statute, the Plaintiff begins by establishing a prima facie case. To do so, he must "demonstrate[] that [the employer] uses a particular employment practice that causes a disparate impact on the basis of" a protected classification such as race. 42 U.S.C.A. § 2000e-

---

[3] During the administrative complaint process Plaintiff had an opportunity to provide the investigators with evidence to support his claims, but he provided nothing, as can be seen from the contents of the ROI.

2(k)(1)(A)(i).  Moreover, to "demonstrate" under this provision means to "meet[] the burden of production and persuasion."  42 U.S.C. § 2000e(m) (emphasis added).  As the First Circuit explains, this prima facie case consists of three components: "identification, impact, and causation."  EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995).  In other words, the plaintiff must "[f]irst . . . identify the challenged employment practice or policy, and pinpoint the defendant's use of it," "[s]econd . . . demonstrate a disparate impact on a group characteristic, such as race, . . . [and t]hird . . . demonstrate a causal relationship between the identified practice and the disparate impact."  Id.

In this case, Plaintiff fails to raise a genuine issue of material fact with regard to any of these three requirements for a prima facie case.  In short, he has presented no evidence that suggests that he is capable of establishing even a prima facie case, much less one that will allow a reasonable decision-maker to find in his favor.

First, Plaintiff has been unable to identify an employment practice or policy that can be subject to a disparate impact inquiry.  The primary thrust of Plaintiff's case centers on the general allegations that HUD "maintain[s] policies and practices . . . which operate to deny equal opportunities to Black employees" and "utilize[s] subjective, non-job related Hiring criteria . . . to disparate and adversely affect Blacks."  Amended Complaint, ¶ 8(H)(3).  None of these general allegations, however, identifies a specific employment practice or policy as required for a case of disparate impact discrimination.  See, e.g., Pouncy v. Prudential Life Insurance Co., 668 F.2d 795, 800–01 (5th Cir. 1982).  The closest that Plaintiff comes to identifying a specific employment practice or policy is his assertion that the "Local Ranking Factors" that were used to assess his candidacy were unrelated to the actual duties of a Public Trust Specialist.

Nevertheless, Plaintiff has presented no evidence to suggest that these rankings factors have been systematically or extensively applied in the promotion process of any other candidate. As courts have recognized, a "claim of discrimination resulting from the mode of filling a single position does not give rise to a disparate impact." Id.; see also Bramble v. American Postal Workers Union, AFL-CIO Providence Local, 135 F.3d 21, 26 (1st Cir. 1998) ("Where an employer targets a single employee and implements a policy which has, to date, affected only that one employee, there is simply no basis for a disparate impact claim."); Oliver v. Digital Equipment Corp., 846 F.2d 103, 110 (1st Cir. 1988) (rejecting a disparate impact claim when Plaintiff only had evidence of the employer's practice on himself).

      Second, even assuming Plaintiff is able to identify a specific employment practice to challenge, he has presented and alleged no evidence to suggest any statistically significant racial disparity in HUD hiring or promotions. Notwithstanding the well-established requirement that a prima facie case of disparate impact be supported by evidence of statistical racial disparities, Plaintiff has neither cited, nor evinced any intent to present, any such evidence to support his allegations. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988) (noting that "evidence in . . . 'disparate impact' cases usually focus[s] on statistical disparities, rather than specific incidents, and on competing explanations for those disparities"). Moreover, even if Plaintiff seeks to attack the "local ranking factors," and as such limits his disparate impact claim to the small sample of those who were promoted to Public Trust Specialists in the New England region, the record demonstrates no adverse impact on black candidates. Indeed, of the three Public Trust Specialists that were eventually selected in the New England Region — Linda Tuttle, Persis Brown, and Carl Harris — two of the three are black. (Ex. 4, ROI 10:3-4, Ex. 5,

9

11:2, Ex. 6, 12:4).  As such, Plaintiff's failure to cite any evidence of a disparate impact, much less one causally linked to a specific employment practice or policy, strongly supports summary judgment against Plaintiff in this case.  See Sandoval v. City of Boulder, 388 F.3d 1312, 1326 (10th Cir. 2004) (affirming summary judgment dismissing the complaint after noting Plaintiff's failure to present any relevant statistical evidence demonstrating a disparate impact); Mems v. City of St. Paul, Department of Fire and Safety Services, 224 F.3d 735, 741 (8th Cir. 2000) (same).

Third, because Plaintiff has failed to identify either an employment practice or policy that is capable of being assessed under a disparate impact framework, or a racial disparity in HUD promotions, he fails to satisfy the third element of a prima facie case: demonstrating that the challenged employment practice is causally linked to the disparate impact.

In short, Plaintiff has not set out any specific facts that, if proven, would establish even a prima facie claim of disparate impact under Title VII.  Aside from general allegations that HUD employment practices have resulted in a racial disparity, Plaintiff has failed to identify a specific employment practice or a disparate impact.  Because there is no genuine issue of material fact, summary judgment is merited in this case.

### B.    Disparate Treatment

As the previous section noted, Plaintiff's administrative complaint in this case relies almost exclusively on the framework of disparate impact.  Even if Plaintiff wished to adjudicate his discrimination claim on the theory of disparate treatment, however, summary judgment against Plaintiff is still merited.  Nothing in the record suggests that a reasonable decision-maker could find for Plaintiff on the theory of disparate treatment.  He cannot present any evidence that

could possibly support his claim that the Defendant's legitimate nondiscriminatory reason for not selecting him for promotion was a pretext for racial discrimination.

The three step burden-shifting framework involved in proving a disparate treatment claim is well established. First, the Plaintiff must present a prima facie case by "showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). At that point, the "burden . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the employer is able to meet this burden of production, then the Plaintiff must show that the articulated nondiscriminatory reason is merely a pretext for impermissible discrimination to prevail. See id. at 803. Notwithstanding the burden-shifting framework, however, the Plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the Plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

For the purpose of this motion for summary judgment, defendant assumes that Plaintiff can establish a prima facie case of disparate treatment under this formulation. Nevertheless, the record also reveals that the government has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's rejection, which serves as a rebuttal of Plaintiff's prima facie case.

As many of the officials involved in the recommendation process stated, Plaintiff was

ranked lower than Ms. Tuttle and all of the other finalists because of his noticeably lower score on two of the ranking factors.  On the one hand, Plaintiff's lack of proficiency with computers led him to receive significant lower scores on the fourth quality ranking factor.  According to Timothy Robison, the panel was well aware during its discussion that Plaintiff "had very little computer experience and in fact had great difficulty in working with [HUD's] computer systems."  (Ex. 6, ROI 12:2).  Moreover, Robert Buzza recalled that the panel's ranking of Plaintiff reflected Plaintiff's "long record of refusing to acquire elementary computer and word-processing skills."  Indeed, according to Robert Buzza, "the panel agreed unanimously that Mr. Archibald did not merit even an acceptable rating on this factor."  (Ex 4, OI 10:3).

On the other hand, Panel members also recalled Plaintiff scoring lower on the first local ranking factor concerning a candidate's professional flexibility.  Timothy Robison recalled feeling that Plaintiff lacked "demonstrated ability to take on different tasks for which he may not have had experience or exposure."  (Ex. 6, ROI 12: 2).  Robert Buzza also noted that Plaintiff "ranked noticeably lower than the other three finalists on the local factor regarding flexibility," in part because Plaintiff had on occasion asserted that he "does not work well in team projects" and "prefers working alone."  (Ex. 4, ROI 10:3).

The affidavit of Marcella Brown, the New England Director of FHEO who received the ranking from the panel and made the final recommendation to Eva Plaza in HUD headquarters, echoed these impressions of Plaintiff.  Familiar with both Ms. Tuttle and Plaintiff, Marcella Brown explained that Ms. Tuttle "had high ability to work in a team, had the ability to be very versatile in her assignments, and . . . could be given any assignment and complete it independently and successfully," while Plaintiff "preferred working alone . . . [and] does not like

to work on a team." (Ex. 3, ROI 8:2). In addition, after noting the importance of the computer system to HUD's investigative work, Marcella Brown added that she did "not believe Mr. Archibald had any computer skills that could compare to [Ms. Tuttle's] skills." Id. In short, Brown's affidavit makes clear that the panel's concerns about Plaintiff corresponded with her own experiences.

The foregoing demonstrates that the Defendant has satisfied its burden of articulating a legitimate nondiscriminatory reason for selecting Ms. Tuttle over Plaintiff. Because the Defendant has met this burden, Plaintiff can only prevail if he proves that the nondiscriminatory reason is actually a pretext for intentional discrimination. Nothing in the record, however, suggests that Plaintiff will be able to demonstrate this. Indeed, aside from Plaintiff's unsupported allegation that the "'Local Ranking Factors' used in the selection process were a pretext for discrimination" — a claim for which he offers no support — the only assertion pertaining to pretext that one can discern from the amended complaint is his claim that although he "was ranked by the Office of Personnel as the best qualified applicant," Ms. Tuttle, "[a] white employee with less education, experience, and years of service was the successful applicant selected for the position." Amended Complaint, ¶ 8. This argument, however, is incapable of demonstrating pretext for three reasons.

First, Mr. Archibald's assertion that he was "ranked by the Office of Personnel as the best qualified applicant" is misleading. Although he had the highest numerical score in the ranking compiled by the Office of Personnel, he shared the top position with Ms. Tuttle, who had an identical numerical score. Moreover, the Office of Personnel's assessment was only a preliminary screening of the applicants, and as such, was based entirely on the candidate's

13

application materials and what they wrote in their personal narratives.  Unlike the panel in the Boston regional office to which the Office of Personnel's initial "best qualified" list was sent, the Office of Personnel did not have any actual personal knowledge of the qualifications or skills of the candidates in question other than what the candidates claimed in their applications.  Thus, the fact that Mr. Archibald was tied for first with Ms. Tuttle in the initial "best qualified" list but was ultimately not selected for the position does not show that HUD's reasons for selecting Ms. Tuttle over him was a pretext for racial discrimination.

Second, in focusing his argument on the fact that he had more education, experience, and years of service than Ms. Tuttle, Plaintiff mistakenly assumes that these factors were the controlling criteria in the promotion process.  Although a minimum threshold of experience was necessary, it was clear from the Quality Ranking Factors in the vacancy announcement that proven ability in specific areas, not formal education or years of experience, were the controlling qualifications for the position.   (Ex. 9, ROI 15:3).  Similarly, the recommending panel in Boston assessed the candidates with regard to the four Quality Ranking Factors and the panel's own local rankings factors.  None of these factors emphasized education, experience, or years of service per se.  Third, even assuming that education, experience, and years of service were the most important criteria in the selection process, "the question is not which of the aspirants was better qualified" at this stage of the disparate treatment framework,  "but rather, whether the employer's stated reasons for selecting one over the other were pretextual."  Rathbun v. Autozone, 361 F.3d 62, 74 (2004).  Indeed, federal courts have long held that no case of employment discrimination can be made if the Plaintiff's assertion of pretext relies entirely on challenging the employer's weighing of competing qualifications.  See, e.g., id. at 74 ([I]n the

absence of strong objective evidence (e.g., test scores), proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext."); Weston-Smith v. Cooley Dickinson Hospital, Inc., 288 F.3d 60, 70 (1st Cir. 2002) (affirming grant of summary judgment against Plaintiff in part because evidence of competing qualifications does not allow a jury to be able to infer improper motives); Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) ("In a failure to promote case, however, a Plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted."); Millbrook, 280 F.3d at 1181 (quoting Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001)) ("[A] Plaintiff's contention that he is the better candidate for a vacancy . . . cannot create an issue of material fact because [a]n employee's perception of his own performance . . . cannot tell a reasonable factfinder about the employee's abilities." (internal quotation marks omitted)).  In this case, Plaintiff has asserted no factual allegations that, if proven, would tend to establish that HUD's nondiscriminatory reason was pretext for impermissible racial discrimination or that "the difference in qualification" between Tuttle and him are "so stark as to support an inference of pretext."  Rathbun, 361 F.3d at 75.  As a result, Plaintiff's assertions do not offer grounds upon which a decision-maker can find Defendant's legitimate nondiscriminatory reason to be pretext and rule in his favor.

**CONCLUSION**

For the reasons set forth above, Defendant requests that this court grant his Motion for Summary Judgment.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney


By:   /s/ Rayford A. Farquhar
       Rayford A. Farquhar
       Assistant U.S. Attorney
       John J. Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA  02210
       (617) 748-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 15, 2007.

        /s/ Rayford A. Farquhar
        Rayford A. Farquhar
        Assistant U.S. Attorney