UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUSSEL J. ARCHIBALD,

                                          Plaintiff

-v-

MEL MARTINEZ, SECRETARY,
UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,

                                          Defendant,

C.A. No. 04-10503-MEL

## PLAINTIFF'S MOTION TO STRIKE, OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND MEMORANDUM IN SUPPORT THEREOF

### MOTION TO STRIKE

The Plaintiff moves to strike Defendant's Motion for Summary Judgment as untimely filed. In September 2006 the Plaintiff and Defendant's attorney, Assistant U.S. Attorney Damian Wilmot, appeared before Judge Morris E. Lasker at the Rule 16.1 hearing at the U.S. District Court in Massachusetts. The Parties agreed all dispositive motions would be filed by April 30, 2007 and any opposition to such motions within thirty days of receipt of the motion. The Defendant failed to file a Motion For Summary Judgment within the time tables agreed to at the Rule 16.1 Hearing before Judge Morris E. Lasker.

### OPPOSITION TO DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff opposes Defendant's motion for summary on the grounds that contrary to Defendant's assertion, the material facts are very much in dispute and says that only through a trial on the merits of the case can a fair and just decision be rendered.

Summary judgment is *only* appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to the material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. The judicial body construing the factual record and all reasonable inferences there from must review the record in the light most favorable to the party opposing summary judgment. See Reynolds v School District No. 1,

69 F.31523, 1531 (10 Cir. 1995). The party opposing summary judgment is required to supply sufficient evidence that would require submission of the case to a judicial decision.

Title VII makes it unlawful for an employer to base an employment decision on an individual's race, color, religion, gender, or national origin. A plaintiff bears the burden of proving discrimination either by direct evidence or more commonly, by indirect evidence considered under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

If the plaintiff presents circumstantial or indirect evidence, the court applies the burden-shifting analysis of McDonnell Douglas, 411 U.S. 802-04. In order to establish a prima facie case of discrimination for failure to promote, I, as the plaintiff must prove the four (4) elements for a prima facie case laid out in McDonnell Douglas. The Plaintiff is of the opinion a prima facie case was established shifting the burden to articulate some legitimate, nondiscriminatory reason for my rejection. The defendants failed to provide legitimate reasons for the rejection. Secondly, assuming they met this burden, the presumption of discrimination would have evaporated shifting the burden to the plaintiff to show the defendant's proffered reasons were a pretext for illegal discrimination which I am of the opinion I have successfully done.

The Public Trust Specialist position was created in the Boston office along with several other Regions by HUD's Deputy Secretary's Office. In Assistant Secretary for Fair Housing and Equal Opportunity Eva Plaza's Answer To Interrogatories (Exhibit 10 in Report Of Investigation) she stated " the PTO staffing initiative was established by the Secretary to create promotional and leadership opportunities for long standing HUD employees". According to the testimony of Assistant Secretary Eva Plaza consideration was suppose to be given to employees with years of service in HUD. The plaintiff asserts to the extent possible consideration was suppose to be given when two applicants are ranked at the same level the employee with more years of service should be given more consideration. The record shows Linda Tuttle the successful applicant at the time of selection had been employed at HUD for about four (4) years and the plaintiff had been employed at HUD for almost twelve (12) years. The Rating Worksheet (Exhibit 18 in Report Of investigation) prepared by Jeff Lahmers, Personnel Representative from the Office Of Personnel and Training at HUD indicates the successful applicant Linda Tuttle and the plaintiff were ranked the highest of the seven applicants who applied for the PTO position. The rating sheet indicates both applicants were awarded identical scores in each of the four (4) Quality Ranking Factors set up by the Office of Personnel and Training.

The vacancy announcement lists Four Quality Ranking Factors which were used to rate each of applicants. Assistant Secretary Eva Plaza was asked to respond in her Interrogatories to whether she felt the four Quality Ranking Factors were a fair basis for evaluating the experience of the candidates. The Assistant Secretary answered affirmatively. When asked if she thought any one factor crucial for effective performance in the position she replied no, explaining she believed all of the factors, collectively are crucial for effective performance of the position. It should be noted the Quality Ranking

Factors were prepared by the Office of Operations and Management within FHEO, in conjunction with the Office of Human Resources.

Pursuant to HUD's Personnel Regulations the candidates for the PTO vacancy in Boston were forwarded to the FHEO HUB Director for final consideration. Mr. Robert Buzza Program Center Director stated in his Affidavit (Exhibit 10 in the Report of Investigation) upon receipt of the Best Qualified List for the PTO position he set up a panel consisting of the three Branch Chiefs and himself to review the applications. Mr. Buzza stated after reviewing the four Quality Ranking Factors of the four finalist for the
Position he then further evaluated the candidates <u>on two local factors reflecting the particular needs of the Boston office.</u> The Program Center Director with out any authority to do so now inserted two unrelated local factors into the evaluation in an attempt to remove the plaintiff as the prime candidate for the position.

The two local factors introduced into the evaluation process were as follows:
1) Demonstrated ability or potential for versatility, including the ability to participate in and lead team investigations…….
2) Demonstrated ability or potential for representation outside FHEO, especially the ability to handle assignments requiring oral presentations.

Allegedly the panel's discussion culminated in rating each applicant on each of the six factors and the plaintiff ranking the lowest of the four candidates.

The plaintiff takes issue with several of the positions the Program Center Director adopted. The plaintiff asserts that the introduction of the two local factors were a pretext for discriminating against him and secondly, several of the candidates don't even investigate cases. In the case of the successful selection Linda Tuttle she worked in the Intake Division of FHEO. Her duties were to receive telephonic or mailed housing complaints and pass them on to the Chief of Intake who in turn forwards it to the Investigation Division. With respect to oral presentations to the best of my knowledge Ms Tuttle never represented our Office to give an oral presentation and staff in this Division never have given presentations. Several of the other candidates also have never worked in the Investigations Division. Based on the information contained in the record that the successful candidate would remain doing the same duties in the same division they presently worked in; why would you impose these irrelevant local ranking factors?

*If this discrimination case was set for trial extensive evidence would be presented by the previous HUB Director Robert LaPlante, the present Chief of Investigations Amziah Craig and other personnel at the Boston office that housing discrimination cases filed in our office are assigned to one investigator who handles the case from intake to resolution. The introduction of this 'TEAM" approach to investigations of cases is a falsehood except in rare cases when there are systemic issues and multiple plaintiffs.*

The core problem with the second local factor introduced into the selection process is that over the ten plus years the plaintiff has been in the Investigations Division the plaintiff is considered by management and by my peers as the best conciliator of cases in our region. The record will reflex that the plaintiff has conciliated more cases than any other investigator in the New England office. Mr. Craig will testify to the fact that the plaintiff has investigated and conciliated some of the most complex and difficult cases in the Boston Regional office over the years. The record will also indicate that plaintiff's annual evaluations over the last ten years reflex outstanding grades for conciliation of cases and oral skills. The irony to hearing Mr. Buzza say the plaintiff ranked lowest of the candidates is ironical because he has signed off on several of my outstanding evaluations.

In attempting to explain why Mr. Buzza decided to create two additional ranking factors concerning "team investigations" the plaintiff offers the following back ground information. In late 1998 or early 1999 the plaintiff was assigned a systemic insurance red-lining case by the Chief of the Investigations Branch. The investigation was proceeding along with the Chief being kept abreast by the plaintiff of the theories and issues involved. Roughly eight months into the investigation Mr. Craig summoned the plaintiff into his office and informed him that Mr. Buzza had decided he wanted Bill Howell and Stephanie Hill to work on the insurance case with him. The plaintiff accepted the change in the course of the investigation working with the two other investigators. Approximately two months into this new arrangement I found myself being left out of briefings going directly to Mr. Buzza and saw a change of philosophy on the theories involved in the case. Because of the difference of opinion on substantive portions of the case the plaintiff met with the Chief and requested he be allowed to leave this quote "team" working on my case. A meeting was set up with the HUB Director Marcella Brown at which time plaintiff expressed a difference of opinion on the insurance case and requested removal from the insurance case assignment. Ms Brown granted the request and until this became an issue during the vacancy for the PTO position plaintiff never realized Mr. Buzza was using this as a way of retribution.

***Please be advised until this incident I had never been asked to work as a team on any case in the Boston Region. Secondly, other than the Boston Housing Authority case to the best my knowledge I don't recall any cases in our region where a team investigated a case. In my fourteen years at HUD in the FHEO office cases have always been assigned to an individual investigator for investigation.***

The core problem with the position defendant's attorney has taken is it is based on a misinterpretation of the facts. Defendants stated the individual selected would continue to perform his/her duties but at an advanced level and also work on a team. Ms Tuttle was an Equal Opportunity Specialist in the Intake Branch of the FHEO Office. Ms Tuttle's duties were to receive housing complaints telephonically or by mail. Her job was to input the information from the method received into TEAPOTS the office tracking system. How can these duties now become a team endeavor?

Defendant attorney's arguments fail to recognize Mr. Buzza, Program Center Director did not take the rankings supplied to him by Washington and make a selection using them. He added his own two new "local ranking factors" in an effort to remove the plaintiff from contention for the position alleging he is not a team player. As previously mentioned this action was a pretext for Discrimination.

With respect to the issue of being a team player defendants assert Ms Tuttle previously worked as a team in her duties in Intake and the plaintiff refuses to work on a team. As stated above the Managers had no ability to judge or rank Ms Tuttle's team work because her duties never required her to work on a team. Before she applied for the PTO position her duties did not require her to work on teams. After Ms Tuttle was selected for the PTO position and until she left HUD she never worked on a team in the Intake Branch. Regarding computer skills the plaintiff admits he is not as highly skilled as several other staff members in FHEO. The problem with basing the employment decision on the level of skill in the use of computers is pretextual. As an investigator whose duties involve investigating housing discrimination cases filed in the Boston Region. Ninety percent (90%)of my time is spent interviewing the parties to the complaint, interviewing witnesses, collecting documentary evidence, forming legal theories based on the facts of the case, and interpreting the legal issues and facts to recommend appropriate remedies or
Judicial action. Ten percent (10%) of the plaintiff time involves inputting information into the computer or writing up a case. The fact is to date plaintiff has never received poor grades on evaluations in this area and more to the point the plaintiff has never received lower than a "Highly Successful" in any annual evaluation in the last ten years. The fact that should be understood is seventy five percent (75%) of Ms Tuttle's time and most of the other employees in the Intake Branch is spent inputting information into computers.

*Defendant's statements with regard to the vacancy announcement are not only misinterpreted, but untrue. Clearly the vacancy announcement for the PTO position (Exhibit 15 in Report of Investigation) shows there was only one position vacancy in the Boston Office. Exhibit 20 of the Report of Investigation clearly states Linda Tuttle was the successful candidate selected. The question arises how can you now state two other African American candidates were also selected for the one vacant position. The Archibald EEO discrimination complaint alleges discrimination based on the October 1, 1999 selection of Linda Tuttle for the vacant position. Persis Brown an African American candidate for the same position was also an unsuccessful candidate for the position in October 1999. Carl Harris an African American was a successful candidate for a PTO vacancy in Hartford, CT. Plaintiff never applied for the vacancy in Hartford, CT and Carl Harris has never in the fourteen years he has been with HUD ever worked in the Boston Office. Persis Brown applied for a second PTO vacancy in Boston in the spring of 2000 and to the best of the plaintiff's knowledge believes was the successful applicant. The core problem with the facts as stated in the motion is that they are not true and the evidentiary records show this.*

In conclusion, there are disputes involving the material facts of this case and the matter should be assigned for trial on the merits of the plaintiff's allegations of discrimination.

The plaintiff takes issue with the fact Ms Tuttle was the more qualified candidate for the PTO vacancy in the Boston Office. The plaintiff had more education and experience than the successful candidate. The plaintiff holds a Bachelor's Degree, a Masters Degree in Planning and Urban Development, and a Juris Doctorate Degree in Law. The plaintiff has worked in the Investigations Branch of the Boston FHEO Office for fourteen (14) years and previous to this position from 1978 to 1980 the plaintiff worked in the U.S. Department of Justice, Civil Rights Division, Appellate Section. The successful candidate Linda Tuttle at the time of application for the PTO position had been at HUD for four (4) years.

In the years preceding application for the PTO position the plaintiff had received numerous awards including two (2) Assistant Secretary Awards for Outstanding Service. The plaintiff has never received lower than an Outstanding or Highly Successful overall annual evaluation in the ten years preceding the application for the PTO position. The plaintiff has routinely been assigned the most complex and difficult cases filed in the Boston Office. Most of the systemic lending and land use case have always been assigned to the plaintiff. Based on the foregoing how can the selection committee chose a candidate for the PTO position whose only position has been in the Intake Branch for approximately four years.

In closing attention should be given to the fact the Boston Office refused to deliver the Boston Work Force Profile requested by the independent outside investigator Ronald McWold. Had the document been provided the Equal Employment Opportunity Commission would have seen the disparity in advancement for minority employees in the Boston FHEO office. Below the HUB Director and Program Center Director there are three Chiefs of the three branches of FHEO. The Chief of Investigations is African American. Below these management level positions the only non management Grade 13 level positions have gone to three white employees with less experience and years of service than several minority career employees in FHEO. The selection of Linda Tuttle would make four white employees holding the only four non management Grade 13 level positions in the Office.

Extensive evidence has been presented concerning the need for a trial on the merits of the evidence presented. Summary Judgment should not be granted.

**Wherefore,** Plaintiff moves that Defendants motion for summery judgment be stricken as untimely or in the alternative denied as unmeritorious.

Respectfully submitted,

*Russell J. Archibald*
Russell J. Archibald, Plaintiff pro se

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Motion To Strike, and Memorandum in Opposition To Summary Judgment filed herein was served in person this ___19th___ day of June, 2007 on Rayford A. Farquhar, Assistant U.S. Attorney at Moakley Federal Courthouse, One Courthouse Way, Ste 9200, Boston, MA 02210.

Russell J. Archibald, Plaintiff pro se
9 Norwich Drive, Johnston, RI 02919
(401) 949-4119