UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL J. ARCHIBALD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MEL MARTINEZ, SECRETARY OF )<br>HOUSING AND URBAN DEVELOPMENT, )<br>)<br>Defendant. )<br>) | C.A. No. 04-10503-MEL |

MEMORANDUM IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S MOTION TO
STRIKE/OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Secretary of Housing and Urban Development ("HUD" or "Defendant") by and through undersigned counsel, respectfully submits this memorandum in support of his Reply to Plaintiff's Motion to Strike/Opposition to Defendant's Motion for Summary Judgment ("Motion to Strike/Opposition"). As set forth in this memorandum, Plaintiff's Motion to Strike should be denied because it is without merit and it was untimely filed. Moreover, Defendant's Motion for Summary Judgment should be granted because Plaintiff has not demonstrated in his Motion to Strike/Opposition that there is a genuine issue as to any material fact. Therefore, Defendant is entitled to a judgment as a matter of law.

I.  BACKGROUND

Russell J. Archibald ("Plaintiff") alleges that HUD discriminated against him on the basis of race (African American) in violation of Title VII of the Civil Rights Act of 1964 when he was not selected for a promotion to the position of Public Trust Specialist in HUD's Boston Office of Fair Housing and Equal Opportunity ("FHEO") in 1999. Ms. Linda Tuttle, who is white, was ultimately

selected for the position.  Defendant moved for summary judgment because there are no material facts in dispute and Plaintiff has not presented any evidence that suggests that HUD's selection was based on racial discrimination or that HUD employs practices or policies that have created a racial disparity in its hiring or promotion practices.

A complete Statement of the Undisputed Material Facts is contained in Defendant's Memorandum in Support of his Motion for Summary Judgment, which has been filed with the Court, and the Defendant relies on those facts and arguments to support this Reply.  Other factual assertions or clarification of inaccurate factual citations by Plaintiff in Plaintiff's Motion to Strike/Opposition to Defendant's Motion for Summary Judgment are contained in the arguments below.

## II.  ARGUMENTS

A. PLAINTIFF'S MOTION TO STRIKE SHOULD BE DENIED BECAUSE IT IS WHOLLY    WITHOUT MERIT AND UNTIMELY FILED.

Plaintiff has moved this Court, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, for an order striking Defendant's Motion for Summary Judgment because it was untimely filed.  See Plaintiff's Motion to Strike/Opposition at 1.  This argument is without merit because Rule 56(b) of the Federal Rules of Civil Procedure states that "[a] party against whom a claim … is asserted … may, **at any time**, move … for summary judgment in the party's favor as to all or any part thereof."  Fed. R. Civ. P 56(b) (emphasis added).  Therefore, under Rule 56(b) there are no time limitations as to when a party can file a motion for summary judgment.  Carll v. McClain Indust. Inc., et al., 2001 U.S. Dist. LEXIS 9188, *11 (D.N.H. June 12, 2001) ("Fed. R. Civ. P. 56(b) allows a motion for summary judgment at any time…"); see also Greystone P'ship Group, Inc. v. KLM Royal Dutch Airlines, et al., 815 F. Supp. 745, 758 (S.D.N.Y. 1993) ("Rule 56 does not

limit the type of claim suitable for summary judgment or the time when summary judgment must be sought."). Moreover, this Court did not impose a deadline for filing dispositive motions.[1]

Furthermore, Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment should be denied because Plaintiff's Motion to Strike was untimely filed. Rule 12(f) of the Federal Rules of Civil Procedure states that a motion to strike should be filed within "20 days after the service of the pleading upon a party." Fed. R. Civ. P. 12(f). Defendant's Motion for Summary Judgment was served upon the Plaintiff on May 15, 2007. Plaintiff should have filed the motion to strike on June 4, 2007, <u>not</u> June 19, 2007, for it to be considered timely. Therefore, Plaintiff's Motion to Strike was late and should be denied.

B.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO SHOW IN HIS OPPOSITION THAT THERE ARE MATERIAL FACTS IN DISPUTE.

Defendant's Motion for Summary Judgment should be granted because there are no material facts that are in dispute and Defendant is entitled to a judgment as a matter of law. A party opposing a summary judgment motion "may not rest upon mere allegations; it must set forth specific facts demonstrating that there is a genuine issue for trial." <u>Herbert v. Mohawk Rubber Co.</u>, 872 F.2d 1104, 1106 (1st Cir. 1989). As shown in the following arguments, Plaintiff has failed to present such facts.

    1.  <u>Defendant Has Met Its Burden of Articulating a Legitimate Reason for Plaintiff's Rejection.</u>

In order to establish a prima facie case of discrimination Plaintiff must show: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of

---

[1] The record in this case provides no support for Plaintiff's assertion that "[t]he Parties agreed that all dispositive motions would be filed by April 30, 2007 and any opposition to such motions within thirty days of receipt of the motion." The Rule 16.1 conference at which Plaintiff alleges the parties made their agreement about an April 30 deadline actually occurred on August 22, 2006, not in September as asserted by Plaintiff; however, no deadline was set for filing dispositive motions.

3

complainant's qualifications." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). At that point, the "burden . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the employer is able to meet this burden of production, then the Plaintiff must show that the articulated nondiscriminatory reason is merely a pretext for impermissible discrimination to prevail. See id. at 803; see also Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff")).

Plaintiff claims that HUD failed to provide legitimate reasons for its rejection. See Plaintiff's Motion to Strike/Opposition at 2. However, assuming that Plaintiff has established a prima facie case of discrimination, the record reveals that the government has met its burden of articulating legitimate, nondiscriminatory reasons for Plaintiff's rejection. As officials involved in the recommendation process stated, Plaintiff was not selected for the position because he lacked proficiency with computers, he lacked professional flexibility, and he refused to work in a team environment. See Defendant's Memorandum in Support of his Motion for Summary Judgment at 12. All of these factors were crucial to the successful performance of the new position.

As Defendant pointed out in its Motion for Summary Judgment, according to Timothy Robison, Chief of the Intake Assessment Division in the Boston FHEO office, the review panel, consisting of four managers from the office, was well aware during its discussion that Plaintiff "had very little computer experience and in fact had great difficulty in working with [HUD's] computer systems." (Ex. 1, ROI 12:2).[2] Moreover, Mr. Robison recalled feeling that Plaintiff lacked

---

[2] "ROI" refers to the Report of Investigation prepared by an independent investigator pursuant to 29 C.F.R. § 1614:108. The ROI served as the record for Plaintiff's administrative proceedings before the Equal Employment Opportunity Commission. The first number following the "ROI" designation refers to the exhibit number, and the

"demonstrated ability to take on different tasks for which he may not have had experience or exposure." Id.

Robert Buzza, FHEO Program Center Director in Boston, recalled that the panel's ranking of Plaintiff reflected Plaintiff's "long record of refusing to acquire elementary computer and word-processing skills."[3] Mr. Buzza also stated that Plaintiff "ranked noticeably lower than the other three finalists on the local factor regarding flexibility," in part because Plaintiff had on occasion asserted that "he does not work well in team projects" and "prefers working alone." (Ex. 2, ROI 10:3). Furthermore, according to Boston FHEO Director Marcella Brown, who is African American, the successful candidate for the position was expected to act in a leadership role, work on a team, work with groups, and take on additional assignments. (Ex. 3, ROI 8:2). Ms. Brown, who was familiar with both Ms. Tuttle and the Plaintiff, further explained that Ms. Tuttle was ultimately awarded the position because she was versatile in her assignments, had the ability to work on a team, and had good computer skills. Id. The Plaintiff, by contrast, preferred to work alone, did not like to work on teams, and did not possess the same proficiency with computers as Ms. Tuttle. Id. In short, Ms. Brown's affidavit makes clear that the panel's concerns about the Plaintiff corresponded with her own experiences.

The foregoing demonstrates that the Defendant has satisfied its burden of articulating legitimate, nondiscriminatory reasons for selecting Ms. Tuttle over the Plaintiff, which serve as a rebuttal of Plaintiff's prima facie case. Thus, since Defendant has met its burden, Plaintiff can only

---

second number following the colon refers to the page number of that exhibit.

[3] The numerous typographical errors in Plaintiff's Motion to Strike/Opposition support the argument that Plaintiff lacks basic computer and word processing skills.

prevail if he proves, by a preponderance of the evidence, that the legitimate, non-discriminatory reasons offered by Defendant are actually pretexts for intentional discrimination.

    2.    <u>Plaintiff Has Not Met His Burden by Showing that the Defendant's Legitimate, Nondiscriminatory Reasons are Pretexts for Discrimination</u>.

Plaintiff claims that even if Defendant has satisfied its burden of articulating legitimate, nondiscriminatory reasons for selecting Ms. Tuttle over the Plaintiff, Plaintiff has met his burden by showing that the Defendant's proffered reasons for his rejection were pretexts for illegal discrimination. <u>See</u> Plaintiff's Motion to Strike/Opposition at 2. As shown below, Plaintiff has failed to meet his burden.

Plaintiff alleges in his Motion to Strike/Opposition that Assistant Secretary Eva Plaza testified in her Answers to Interrogatories that "consideration was supposed to be given to employees with years of service in HUD." <u>Id.</u> According to the Plaintiff, because he was employed at HUD for almost 12 years at the time of the vacancy announcement, while Ms. Tuttle was only employed at HUD for 4 years, and because he and Ms. Tuttle were awarded identical scores for the four quality ranking factors, he should have been given more consideration and, therefore, should have been awarded the position. <u>Id.</u> However, even though Ms. Plaza did state that "the Public Trust Officer staffing initiative was established by the Secretary to create promotional and leadership opportunities for long-standing HUD employees" (Ex. 4, ROI 9:2), Plaintiff's years of experience did not offset his lack of proficiency with computers, his lack of professional flexibility, and his refusal to work in a team environment. As mentioned previously, these factors were essential to the effective performance of the position.

Plaintiff also asserts that the Program Center Director, Robert Buzza, had no authority to use the "local ranking factors" that were used to assess Plaintiff's candidacy. Plaintiff claims that the

local factors were unrelated to the actual duties of the position in question and were used as an attempt to remove him as the prime candidate for the position. See Plaintiff's Motion to Strike/Opposition at 3. Despite this argument, there was no legal bar that prevented the Program Center Director from using these local ranking factors.

The two[4] local factors were chosen because the Program Center Director and the other panel members thought that the factors were particularly important in determining the best qualified candidate for the position. Moreover, the four quality ranking factors that were prepared by the Office of Personnel and Training at HUD's Headquarters in Washington were preliminary. Unlike the panel in the Boston Regional Office to which the Office of Personnel's initial "best qualified" list was sent, the Office of Personnel did not have any actual personal knowledge of the qualifications or skills of the candidates in question other than what the candidates claimed in their applications. Furthermore, there is no merit to Plaintiff's assertion that the Program Center Director lacked authority to implement the two local factors, as evidenced by the absence of any authority cited by Plaintiff.

Plaintiff also alleges that the two local ranking factors and the use of "computer proficiency" as a determining factor were pretexts for discriminating against him. See Plaintiff's Motion to Strike/Opposition at 3, 5. Of the four candidates, two were African American – Plaintiff and Persis Brown, and two were white – Patricia Moreno and Linda Tuttle. (Ex. 5, ROI 19:1). Linda Tuttle was ranked first, Persis Brown was ranked second, Patricia Moreno was ranked third, and Plaintiff was ranked fourth. (Ex. 6, ROI 11:2). Ms. Brown, who is the same race as the Plaintiff, was ranked second and was also evaluated based on the local ranking factors and the "computer proficiency"

---

[4] As Defendant points out in the Memorandum in Support of his Motion for Summary Judgment, the record is unclear on how many local ranking factors were used. See Defendant's Memorandum in Support of his Motion for Summary Judgment at 4.

factor.  See Ex. 2, ROI 10:2.  As a result, Plaintiff's argument fails because if the local ranking factors and the use of "computer proficiency" as a determining factor were pretexts for race discrimination, then the two white candidates would have been ranked first and second, while the two African American candidates would have been ranked third and fourth; however, this was not the case.

Next, Plaintiff claims that Defendant misrepresented the facts by stating that "the individual selected would continue to perform his/her duties but at an advanced level and also work on a team."  Plaintiff's Motion to Strike/Opposition at 4.  Defendant did not make this statement.  Instead, Defendant stated that "[a] Grade 12 Civil Rights Analyst selected as a Public Trust Specialist would continue to perform his or her existing duties, but would have additional responsibilities and would be expected to act in more of a leadership or supervisory capacity."  Defendant's Memorandum in Support of his Motion for Summary Judgment at 3.  Acting in a leadership or supervisory capacity is clearly something different from merely working on a team.

Moreover, Plaintiff argues that Ms. Tuttle's duties at the time of the vacancy announcement did not require her to work on a team and that she never worked on a team while employed at HUD.  See Plaintiff's Motion to Strike/Opposition at 5.  Therefore, according to the Plaintiff, "the managers had no ability to judge or rank Ms. Tuttle's team work."  Id.  Plaintiff also claims that there has been only one instance, since working at HUD, when he was asked to work on a team.  See id. at 4.  However, Plaintiff has misrepresented the facts.

In Ms. Tuttle's narrative for her application, she stated that while working in the Intake/Assessment Branch at HUD, she was "selected to participate on a team created to reduce the then current backlog of claims filed with the office."  (Ex. 7, ROI 17:3).  Ms. Tuttle also stated in

her narrative that she "participated as a member of a team of investigators selected to conduct a high profile, fast track investigation of complaints filed against the Boston Housing Authority." Id. Also, Marcella Brown stated that she worked closely with Ms. Tuttle and she "had a high ability to work on a team." (Ex. 3, ROI 8:2). Furthermore, Plaintiff contradicts himself when he says that there has been only one instance when he was asked to work on a team because Plaintiff stated in his "rebuttal statement" that he was assigned to work on a team on two different occasions. (Ex. 8, ROI 7:2).

Plaintiff also charges that there is a disparity in the advancement for minority employees at the Boston HUD office. See Plaintiff's Motion to Strike/Opposition at 6. Particularly, he claims that there has been a pattern of discrimination against minority employees, where white employees with less education and work experience were promoted before minority employees. This argument is irrelevant because it was not the subject of Plaintiff's own complaint, and Plaintiff did not file a class action complaint with the Equal Employment Opportunity Commission.[5] See Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) ("A federal employee must exhaust his class action claim with the United States Equal Employment Opportunity Commission before raising it in federal court, and exhaustion of an individual Title VII of the Civil Rights Act of 1964 claim is not sufficient to exhaust a class action claim."). Moreover, Plaintiff has not provided any evidence that shows this disparity pursuant to the initial disclosure requirements of Rule 26(a) of the Federal Rules of Civil Procedure.[6]

Plaintiff further argues that Defendant's statement regarding the vacancy announcement were misinterpreted and untrue. See Plaintiff's Motion to Strike/Opposition at 5. According to the

---

[5] Plaintiff was given the opportunity to file a class complaint 15 days after the Equal Employment Opportunity Commission accepted his claim for investigation. See (Ex. 9, ROI 2:2).

[6] In fact, Plaintiff provided nothing to Defendant pursuant to Fed. R. Civ. P. 26(a). See Argument C, below.

Plaintiff, Defendant stated "that two other African American candidates were also selected for the one vacant position." Id. Plaintiff's representation of Defendant's argument is incorrect.

In Defendant's Motion for Summary Judgment, Defendant argues that of the two other Public Trust Specialist positions that later became available in the New England Region, Persis Brown and Carl Harris, both African American, were selected for the positions. See Defendant's Memorandum in Support of his Motion for Summary Judgment at 9. Defendant was not arguing that two African American candidates were selected for one vacant position. Instead, Defendant was demonstrating that Plaintiff's allegation that there was a pattern of discrimination at the Boston HUD office was false, and that there was no adverse impact on African American candidates who applied to the newly available positions.

Plaintiff continues to argue in his Motion to Strike/Opposition, as he did in his amended complaint, that he has more education, experience, and years of service than Ms. Tuttle, and, as a result, he should have been awarded the position. See Motion to Strike/Opposition at 6. However, as Defendant argued in its Motion for Summary Judgment, these factors were not the controlling criteria in the selection process. Although a minimum threshold of experience was necessary,[7] it was clear from the quality ranking factors in the vacancy announcement that proven ability in specific areas, not formal education or years of experience, were the controlling qualifications for the position. (Ex. 10, ROI 15:3).

None of the panel's local quality ranking factors emphasized education, experience, or years of service per se. Moreover, even if education, experience, and years of service were the most important criteria in the selection process, "the question is not which of the aspirants was better

---

[7] The vacancy announcement stated only that candidates must have worked the equivalent of one year in "the next lower grade, in the Federal Service, in the normal line of progression, that is typically related to work of this position." (Ex. 10, ROI 15:2).

qualified," "but rather, whether the employer's stated reasons for selecting one over the other were pretextual." Rathbun v. Autozone, 361 F.3d 62, 74 (1st Cir. 2004). Indeed, federal courts have long held that no case of employment discrimination can be made if the Plaintiff's assertion of pretext relies entirely on challenging the employer's weighing of competing qualifications. See, e.g., Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) ("In a failure to promote case, however, a Plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted"); Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002) (quoting Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001) ("[A] Plaintiff's contention that he is the better candidate for a vacancy . . . cannot create an issue of material fact because [a]n employee's perception of his own performance . . . cannot tell a reasonable factfinder about the employee's abilities" (internal quotation marks omitted))).

Plaintiff also emphasizes that he has a Juris Doctorate and a Master's Degree in Planning and Urban Development. See Motion to Strike/Opposition at 6. Plaintiff fails to mention, however, that Ms. Tuttle also had a Juris Doctorate, and that she was a member of the Massachusetts Bar at the time of the application process. (Ex. 7, ROI 17:6). Plaintiff does not assert that he was ever admitted to a bar, nor does he assert that his degree in Planning and Urban Development relates to the responsibilities of a position in FHEO involving housing discrimination.

  C.  PLAINTIFF HAS FAILED TO COMPLY WITH HIS DISCLOSURE OBLIGATIONS UNDER RULE 26(a).

The plain language of Fed. R. Civ. P. 26(a) governs the timing and scope of discovery disclosures. Rule 26(a)(1) provides that "a party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its

claims or defenses, unless solely for impeachment, identifying the subjects of the information … ." These disclosures must be made "within 14 days after the Rule 26(f) conference[.]" Fed. R. Civ. P. 26(a)(1).

Rule 37(c)(1) then sets out the framework for deciding whether a party's witnesses should be excluded if that party fails to comply with the Rule 26(a) disclosure requirements. Rule 37(c)(1) states "[a] party that without substantial justification fails to disclose information required by Rule 26(a) …, **is not**, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1) (emphasis added).

Plaintiff states that he plans to introduce evidence at trial to show that HUD employees do not typically work in teams. See Plaintiff's Motion to Strike/Opposition at 3. To attempt this showing, Plaintiff intends to introduce evidence that he has not previously disclosed, namely, testimony from the former "HUB" Director, Robert LaPlante, the current Chief of Investigations, Amziah Craig, and other personnel at the Boston office. See id. at 3. Plaintiff claims that these witnesses will show that the ""team" approach to investigations of cases is a falsehood except in rare cases when there are systemic issues and multiple plaintiffs." Id.

Under Rule 26(a)(1)(A), Plaintiff was required to disclose the identity of all persons likely to have discoverable information. Plaintiff failed to comply with this requirement by not disclosing the names of witnesses he now says he intends to call at trial. As a result, Defendant did not have an opportunity to depose these witnesses and conduct related discovery because of Plaintiff's failure to make the required disclosures that would have triggered such discovery. Plaintiff's failure to disclose was far from "harmless," as his argument for a trial turns on presenting the testimony of the

undisclosed witnesses, and Plaintiff has offered nothing to suggest that there is "substantial justification" for his nondisclosures. Fed. R. Civ. P. 37(c)(1).

Plaintiff may argue that the disclosure requirement of Rule 26(a)(1)(A) does not apply to him because he will call his witnesses "solely for impeachment." The impeachment exception to Rule 26(a)(1)(A) is not applicable in this case. Rule 26(a)(1)(A) distinguishes between impeachment evidence and substantive evidence, and exempts only evidence used **solely** for impeachment purposes. See Ross v. Corp. of Mercer Univ., 2007 U.S. Dist. LEXIS 23590 (M.D. Ga. Mar. 30, 2007) (citing Cooley v. Great S. Wood Preserving, 138 Fed. Appx. 149, 161 (11th Cir. 2005) (emphasis added)). "Statements are useful as substantive evidence if they relate to a plaintiff's prima facie case or a defendant's affirmative defenses." Newsome v. Penske Truck Leasing Corp., 437 F. Supp.2d 431, 435 (D. Md. 2006). Conversely, impeachment evidence is used to discredit witnesses and reduce the effectiveness of their testimony. Id. When impeachment evidence relates to the claims or defenses in a matter, the evidence can be admissible for both substantive and impeachment purposes. Id. However, evidence that can be used for both impeachment and substantive purposes does not fit under the "solely for impeachment" exception of Rule 26(a)(1)(A), and, therefore, must be disclosed. Id. at 436.

In the present case, even if Plaintiff argues that disclosure was unnecessary because he plans to use the witnesses for impeachment purposes, Plaintiff's argument will fail because the evidence that he plans to introduce at trial is also substantive. Plaintiff claims that the witnesses will show that the "[team] approach to investigations of cases is a falsehood except in rare cases when there are systemic issues and multiple plaintiffs." See Plaintiff's Motion to Strike/Opposition at 3. Plaintiff is attempting to introduce witnesses that may possess substantive knowledge of his claim that the local

ranking factors were irrelevant and were mere pretexts for race discrimination. Therefore, Plaintiff was required to disclose the names of these witnesses under Rule 26(a)(1)(A).  See Newsome, 437 F. Supp.2d. at 436 (citing Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998) (impeachment evidence which is at least in part substantive did not fall within the "solely for impeachment" exceptions of Rule 26(a)).

Plaintiff's pro se status does not excuse him from complying with the federal rules.  While courts have historically provided some latitude to pro se parties, "the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law.  The Constitution does not require judges – or agencies for that matter – to take up the slack when a party elects to represent himself."  Taal v. Zwirner, 2003 U.S. Dist. LEXIS 4019, at *13 (D.N.H. Mar. 10, 2003) (quoting Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) (citations and internal quotation marks omitted)).  Moreover, as the holder of a Juris Doctrate, Plaintiff knew or should have known of his obligation to comply with the rules that govern litigation in this Court.

Therefore, Plaintiff should not be allowed to introduce evidence that he has not previously disclosed.  As Plaintiff's argument for a trial is based on inadmissible evidence, there is no basis for conducting a trial.  Thus, this matter is proper for summary judgment.

## CONCLUSION

For the reasons set forth above, the Secretary of Housing and Urban Development respectfully requests that the court deny the Plaintiff's Motion to Strike and grant the Defendant's Motion for Summary Judgment.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

          /s/ Rayford A. Farquhar
          Rayford A. Farquhar
          Assistant U.S. Attorney
          John J. Moakley U.S. Courthouse
          1 Courthouse Way, Suite 9200
          Boston, MA 02210
          (617) 748-3100

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2007.

          /s/ Rayford A. Farquhar
          Rayford A. Farquhar