```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


                                    )
RUSSELL J. ARCHIBALD,               )
     Plaintiff,                     )
                                    )
          v.                        )     04-CV-10503-MEL
                                    )
MEL MARTINEZ, SECRETARY OF          )
HOUSING AND URBAN DEVELOPMENT       )
     Defendant.                     )
                                    )
```

MEMORANDUM AND ORDER

LASKER, D.J.

      Russell J. Archibald sues Mel Martinez, Secretary of Housing and Urban Development ("HUD") for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., after HUD officials did not select him for promotion to Public Trust Specialist in 1999. Martinez moves for summary judgment, which, for the reasons set forth below, is granted.

      Archibald, black, is employed at HUD's Office of Fair Housing and Equal Opportunity ("FHEO") in Boston as a Civil Rights Analyst. In July 1999, HUD sought applications for Public Trust Specialist, a newly created position with leadership and supervisory responsibilities aimed at restoring the public's trust in HUD's ability to allocate and manage efficiently its resources. In August 1999, Archibald applied for the job.

1

After receiving submissions, HUD's Office of Personnel and Training in Washington, D.C. selected Archibald and six other candidates as the "best qualified" following an evaluation of applicants based on four "Quality Ranking Factors": (1) skill in fact-finding analysis, formulating and presenting recommendations and negotiation resolution of complex issues, (2) ability to gather, assemble and analyze facts, draw conclusions and devise solutions to assigned problems, (3) ability to communicate clearly, concisely and informatively both orally and in writing, and (4) skill in using personal computers and database systems. Of the seven remaining candidates, four were black. Archibald and Linda Tuttle, the white individual whom HUD ultimately chose, were tied with the highest numerical score.

The Office of Personnel and Training then sent the "best qualified" list to a panel of supervisors in HUD's New England Regional Office for additional review. The panel made another rough cut, decreasing the candidates from seven to four, two of whom were black and two of whom were white. Archibald and Tuttle made the cut.

The panel next evaluated the final candidates according to the original four Quality Ranking Factors along with "local ranking factors." Although the panel members' recollection regarding what the "local ranking factors" consisted of and how many were used is inexact, at least two of the four panelists remember professional versatility as one of them. Archibald

himself claims that the "local ranking factors" consisted of: 1) demonstrated ability or potential for versatility, including the ability to participate in and lead team investigations, 2) demonstrated ability or potential for representation outside FHEO, especially the ability to handle assignments requiring oral presentations.

      The panel members did not interview the applicants but, instead, relied on their personal experiences. To prioritize the candidates, the panelists assigned a score from 1 to 10 to each ranking factor for each finalist and then averaged the scores. Based on this scoring system, Tuttle ranked first and Archibald ranked last. The panel then recommended Tuttle for the position of Public Trust Specialist to Marcella Brown (who is black), the New England Director of FHEO. Brown in turn referred the panel's nomination to Eva Plaza (who is Hispanic), the Assistant Secretary of FHEO at HUD headquarters. Plaza accepted the recommendation and chose Tuttle as Public Trust Specialist.

      After HUD informed Archibald of its decision, he filed an administrative complaint with HUD, alleging discrimination based on his race. Archibald claims HUD's selection of Tuttle over him demonstrates racial bias because she is less educated, less experienced, had only four years of service at HUD compared to Archibald's twelve at the time they applied, and that he and Tuttle had identical scores based on the four Quality Ranking Factors used for preliminary screening. Archibald contends that

the additional two local factors were unrelated to the actual duties of the position in question, and the panel members used these extra hiring criteria to remove him as the prime candidate.

After exhausting his administrative remedies before the U.S. Equal Employment Opportunity Commission, he brought this suit on August 4, 2004, amending his complaint on June 27, 2006. In his amended complaint, Archibald alleges that the "local ranking factors" were a "pretext for discrimination and not probative of the Public Trust position because they relied on responsibilities unrelated to the Plaintiff's job performance." He seeks back pay, promotion to a senior specialist position, damages for pain and suffering, attorneys fees, costs, and the creation of an affirmative action program at HUD to eliminate discriminatory practices.

Martinez moves for summary judgment, maintaining that no material facts are in dispute and that Archibald can present no evidence suggesting that HUD's selection was based on racial discrimination. He asserts that HUD did not choose Archibald for the position because his history of refusing to acquire elementary computer skills resulted in a low score on the fourth Quality Ranking Factor. Further, Martinez claims that Archibald's "local factor score" on versatility was negatively affected since he has asserted on numerous times that he preferred working alone. Martinez adds that although HUD required a minimum threshold of experience, the quality ranking

factors, not formal education or years of experience, were the controlling qualifications.

Archibald has styled his claim as a disparate impact case. Such cases involve facially neutral employment practices and policies that more adversely affect a protected class of employees. "On summary judgment, the question is whether plaintiff has produced sufficient evidence that he was discriminated against" because of his race to raise a genuine issue of material fact. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002). Archibald, however, fails to raise a genuine issue of material fact that the ranking factors on which he obtained low evaluation scores were pretextual and used to eliminate him as a prime candidate for the Public Trust Specialist position.

First, Archibald argues that to remove him as a frontrunner, Robert Buzza, Program Center Director of FHEO and a member of the panel that ultimately nominated Tuttle for the position, added the local factor requiring an ability to participate in and lead team investigations. Archibald contends that Buzza knew of an incident that occurred in late 1998 or early 1999, when Archibald requested removal from a case because he was having trouble working with two other investigators. He claims Buzza used the additional versatility/teamwork factor as a way of retribution.

Although Archibald attacks the motivation for which HUD

introduced and used the teamwork local ranking factor, Martinez provides a legitimate, nondiscriminatory reason for requiring that successful candidates demonstrate their ability to work on and lead teams: The vacancy announcement for the Public Trust Specialist position explained that the incumbent would have complex monitoring and managing responsibilities. Because the Specialist would be integral to HUD's effort in "restoring the public's trust in HUD's ability to efficiently manage and allocate its resources," he or she would have to "develop the skills necessary to lead and assist in this transformation." In her January 1, 2001 affidavit, Marcella Brown, FHEO's New England Director, confirms that the individual selected as Public Trust Specialist was expected "to act in a somewhat of leadership role and work on a team, perhaps as a team leader, work with groups and take on additional assignments. The position...could lead to a supervisory position." In the circumstances described, HUD's requirement that the individual awarded the position possess the ability to work in a team setting, both as a member and a leader, was understandable and legitimate.

Second, although Archibald initially alleged in his amended complaint that only the "local ranking factors" were used as a pretext for discrimination, he now contends that computer proficiency, one of the four original "Quality Ranking Factors," was also a pretextual hiring criterion. He explains that as an investigator, he spends 90% of his time interviewing parties to

complaints and witnesses, collecting evidence, formulating legal theories, and interpreting legal issues and facts to recommend appropriate remedies or judicial action.  Only 10% of Archibald's time is spent inputting information into a computer.  While Archibald may have made a case that computer skills are unrelated to his current position as a Civil Rights Analyst, he has not, however, provided a reason why computer proficiency should not be considered a legitimate hiring criterion for the Public Trust Specialist position.  He even concedes that he is "not as highly skilled as several other staff members in FHEO."

HUD again offers valid, nondiscriminatory reasons for including computer skills as a ranking factor.  Brown explains in her affidavit that every investigator must know how to use computers because they input case information into the office's "Teapots" system during the processing of complaints.  Moreover, Brown considers computer skills vital in communicating with other office members and because the FHEO participates in tele-work (i.e. working from home).  And according to Brown, while Tuttle possesses good computer skills, Archibald's cannot compare.  Tim Robison, Chief of the Intake Assessment Division at FHEO, also recalls in his January 4, 2001 EEOC witness statement that he was particularly interested in an applicants' ability to use computers since Robison's own role requires working with the office's computer system.  Robison adds that during evaluation of the candidates, he had specifically commented on Archibald's low

level of computer experience and his "lack of demonstrated ability to take on different tasks for which [Archibald] may not have had experience or exposure."

In sum, Martinez provides compelling explanations for HUD's use of the challenged hiring criteria while Archibald fails to raise a genuine issue of fact regarding HUD's use of particular ranking factors to discriminate against black candidates and, specifically, Archibald.  Accordingly, Martinez is entitled to summary judgment since the record conclusively reveals "some other, nondiscriminatory reason for the employer's decision."  Zapata-Matos, 277 F.3d at 45, citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

The motion for summary judgement by Mel Martinez, Secretary of Housing and Urban Development, is GRANTED.  The complaint is dismissed.

It is so ordered.


Dated:    March 19, 2008
          Boston, Massachusetts      /s/ Morris E. Lasker
                                          U.S.D.J.